# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BOSTON JERMAINE TOMPKINS,

Defendant-Appellant.

UNPUBLISHED
March 15, 2016

No.   323193
Macomb Circuit Court
LC No.   2013-003699-FC

Before:  GLEICHER, P.J., and JANSEN and SHAPIRO, JJ.

PER CURIAM.

Defendant was convicted, following a jury trial, of armed robbery, MCL 750.529, and conspiracy to commit armed robbery, MCL 750.157a; MCL 750.529.  He was sentenced, as a third habitual offender, MCL 769.11, to 15 to 30 years' imprisonment for both convictions. Defendant now appeals as of right.  We affirm defendant's convictions, but vacate his sentences and remand for resentencing.

## I. SUFFICIENCY OF THE EVIDENCE

This case arises from the robbery of the Foot Action in the Macomb Mall.  Defendant first argues that there was insufficient evidence at trial to convict him of armed robbery and conspiracy to commit armed robbery.  In order to convict defendant of armed robbery, the prosecutor was required to prove beyond a reasonable doubt that he committed a larceny. Defendant argues that Jeremaine Passmore, defendant's coconspirator, was the Foot Action store manager, which made him the bailee or trustee of the money in the store.  Defendant claims that this position gave Passmore the authority to give him the store's money, and thus, because Passmore was the "owner" of Foot Action's money for purposes of the larceny statute, defendant did not take the property of another without that person's consent as required by the larceny statute.  Defendant argues that, because the prosecutor failed to present sufficient evidence to show beyond a reasonable doubt that he committed a larceny, there was necessarily insufficient evidence admitted at trial to convict him of armed robbery and conspiracy to commit armed robbery.  We disagree.

A court must review a challenge to the sufficiency of the evidence de novo and in a light most favorable to the prosecution to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014).  "The standard of review is deferential: a reviewing

-1-

court is required to draw all reasonable inferences and make credibility choices in support of the . . . verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

In a criminal case, due process requires that a prosecutor introduce evidence sufficient to justify a trier of fact in concluding that the defendant is guilty beyond a reasonable doubt. See *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). A prosecutor need not negate every reasonable theory of innocence, but must only prove his own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant provides. *People v Chapo*, 283 Mich App 360, 363-364; 770 NW2d 68 (2009). All conflicts in the evidence must be resolved in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

In order to convict defendant of armed robbery, the prosecution needed to prove that:

> (1) the defendant, in the course of committing a *larceny* of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007) (emphasis added).]

The elements of larceny are:

> "(1) an actual or constructive taking of goods or property, (2) a carrying away or asportation, (3) the carrying away must be with a felonious intent, (4) the subject matter must be the goods or personal property of another, (5) the taking must be *without the consent and against the will of the owner*." [*People v Cain*, 238 Mich App 95, 120; 605 NW2d 28 (1999) (citation omitted) (emphasis added).]

Here, defendant actually took the Foot Action money from the store with the intent of splitting it with Passmore. Thus, the evidence at trial was sufficient to show that the first four elements of larceny were met. Defendant argues that the prosecutor failed to present legally sufficient evidence to prove only the fifth element of larceny; that he took the money without consent of the owner. See *Cain*, 238 Mich App at 120.

"For purposes of larceny, the 'owner' is the person who has rightful possession and control of the property." *People v Pohl*, 202 Mich App 203, 205; 507 NW2d 819 (1993), remanded on other grounds 445 Mich 918 (1994). Further, for purposes of the larceny statute 'owner' can include "any agent or employee of the owner who at the time of the alleged larceny had custody and possession of the property for the owner." *People v Hatch*, 156 Mich App 265, 267; 401 NW2d 344 (1986). However, these definitions contemplate the type of possession or custody necessary on the part of the *complaining* witness and do not indicate that an employee constitutes an 'owner' under the statute such that their consent to a taking eliminates the existence of a larceny. Thus, although an employee may be considered an "owner" for purposes

-2-

of the larceny statute so that a taking from them can constitute a larceny, an employee's status as an 'owner' does not render their consent to a taking of property valid consent that transforms that conduct from a larceny into embezzlement. Instead, the question of valid consent must

> depend largely upon the capacity in which the defendant was given access to or dominion over the property taken, and upon the powers or duties which the owner gave or imposed upon him with respect thereto. For example, one to whom property is delivered by the owner for some limited, special or temporary purpose may be regarded as having its custody only, and as capable of committing larceny thereof. [*People v Jones*, 106 Mich App 429, 433; 308 NW2d 243 (1981) (citation and quotation marks omitted).]

There was testimony at trial that indicated that Passmore was the only employee in the store at the time of the robbery who had a key to the cash register and the authority to open it. Additionally, his assistant manager status gave him the authority to lock up and run the daily activity of the store. However, after the robbery, Passmore called a store manager, who directed him to call 911. Additionally, the evidence indicates that Passmore was not in charge of actually scheduling the employees for shifts at the store. Thus, there was testimony at trial that indicated Passmore's authority at the store was limited. Similarly, there was no testimony at trial that indicated Passmore had dominion over the store's money such that he had similar power to it as the owner. While the actual owner of the store had conferred limited possession of the store's money to Passmore, it does not appear as if he was empowered with sufficient authority over the money to give valid consent to its taking. See *Jones*, 106 Mich App at 433.

The facts of the instant case are analogous to those in *Jones*, where the defendant appealed his larceny conviction, arguing that the K-Mart cashier from whom he received store merchandise without paying had rightful possession of the property and thus the taking was consensual and did not constitute larceny. *Jones*, 106 Mich App at 431-434. This Court concluded that the cashier had only "limited authority and discretion in connection with the goods and in the present case her duties did not go beyond tallying the prices, bagging the goods, and receiving money in exchange." *Id.* at 433. Therefore, this Court found that legal possession of the merchandise had remained in the K-Mart Corporation and the cashier "lacked the actual authority to consent to the taking of merchandise by [the] defendant without payment." *Id.* at 433-434. Thus, the Court found that there was sufficient evidence to convict the defendant of larceny. *Id.* at 432. Passmore also had limited authority and discretion over Foot Action's money, as his duties were limited to locking the cash register and store doors, and running the daily activity of the store. Thus, Passmore lacked the authority to consent to the taking of the money by defendant, and legal possession of the money remained with Foot Action. See *id.* at 433-434. Defendant only argues that the prosecutor failed to present legally sufficient evidence to prove beyond a reasonable doubt the consent element of larceny, and the discussion above shows that the prosecutor met that burden.[1] See *Cain*, 238 Mich App at 120. As a result, there

---

[1] Additionally, although defendant claims valid consent to take the money would have transformed his conduct from larceny into aiding and abetting embezzlement, defendant would still have been guilty of larceny regardless of Passmore's consent. The elements of larceny by

was legally sufficient evidence presented at trial to prove that defendant committed armed robbery.

Regardless, we also note that the other elements of armed robbery were established. Testimony from Brittany Carroll, the uninvolved Foot Action employee present during the robbery, and defendant established that during the course of the larceny defendant brandished what appeared to be a silver gun, but was actually a cell phone, when he demanded the money in the register. Additionally, testimony from Carroll and Roseville Police Officer Steven Boucher established that after the robbery Carroll was "visibly shaken" and crying while giving her statement. Carroll also testified that she was "scared" when defendant pointed what she thought was a gun at her and demanded the money. Thus, the prosecution presented legally sufficient evidence that defendant put a person present during the larceny in fear and possessed an article used in a manner to leave a person to reasonably believe that the article was a dangerous weapon. As a result, the prosecutor presented legally sufficient evidence of every element of armed robbery and proved that defendant committed armed robbery. See *Chambers*, 277 Mich App at 7.[2]

Defendant argues that if his armed robbery conviction fails because there was insufficient evidence of a larceny, then his conspiracy to commit armed robbery conviction would fail for the same reason. However, as the discussion above demonstrates, the prosecutor presented sufficient evidence that defendant committed a larceny and armed robbery. The prosecutor also

conversion are: (1) the property at issue must have some value; (2) the property belonged to someone other than the defendant; (3) someone delivered the property to the defendant, *by either legal or illegal means*; (4) the defendant embezzled, converted to his own use, or hid the property with the intent to embezzle or fraudulently use the property; and (5) the defendant intended to defraud the owner permanently of that property at the time the property was embezzled, converted, or hidden. MCL 750.362; *People v Mason*, 247 Mich App 64, 72; 634 NW2d 382 (2001). Thus, even if Passmore had legally consented to defendant taking Foot Action's money, defendant would have still committed a larceny.

[2] Defendant argues that the facts of the case make defendant, at most, an aider and abettor to embezzlement. The elements of embezzlement are: (1) "A person who as the agent, servant, or employee of another person," (2) "fraudulently disposes of or converts to his or her own use, or takes or secretes with the intent to convert to his or her own use", (3) "without the consent of his or her principal," (4) "any money or other personal property of his or her principal that has come to that person's possession or that is under his or her charge or control by virtue of his or her being an agent, servant, employee, trustee, bailee, or custodian." MCL 750.174. In order to convict defendant as an aider and abettor, the prosecution must prove beyond a reasonable doubt that "the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time the defendant gave the aid or assistance." See *People v Jones (On Rehearing)*, 201 Mich App 449, 451; 506 NW2d 542 (1993). Thus, while under these facts the prosecution could have charged defendant as an aider and abettor to embezzlement, armed robbery was equally applicable to the facts of this case. It is within the duty and authority of a prosecutor to determine the initial charges against a defendant, MCR 6.112(H); *People v Nyx*, 479 Mich 112, 124-125; 734 NW2d 548 (2007), and the charges brought were supported by the evidence.

presented sufficient evidence to prove beyond a reasonable doubt that defendant committed conspiracy to commit armed robbery. To prove conspiracy to commit armed robbery, the prosecution must prove that two or more people agreed to commit an armed robbery, with the specific intent to combine and to accomplish the robbery. MCL 750.157a; *People v Mass*, 464 Mich 615, 629; 628 NW2d 540 (2001). Proof of a conspiracy may be derived from the circumstances, acts, and conduct of the parties. *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011). Testimony from Carroll, the police officers, and defendant established that defendant and Passmore entered into an agreement to take money from Foot Action and for defendant to use a cell phone as a gun during the robbery. As a result, the prosecutor presented legally sufficient evidence to prove beyond a reasonable doubt that defendant committed conspiracy to commit armed robbery. See MCL 750.157a; *Mass*, 464 Mich at 629.

## II. MISSING SIR

Next, defendant argues that the trial court erred when it failed to prepare a sentencing information report (SIR). We agree.

An issue is not properly preserved if it is not raised before, addressed, and decided by the trial court. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Defendant did not object to the omission of the SIR at his plea hearing or at either of his sentencings and, as a result, this issue is unpreserved. Because defendant did not object in the trial court to the absence of an SIR, our review is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Before a person convicted of a felony is sentenced, the probation officer must prepare a written presentence investigation report (PSIR) for the court's use. MCL 771.14(1); MCR 6.425(A)(1); *People v Johnson*, 203 Mich App 579, 587; 513 NW2d 824 (1994). A PSIR must include a computation of the recommended sentence range under the statutory sentencing guidelines. MCL 771.14(2)(e). To determine the applicable guidelines range, the trial court must score the offense variables (OVs) and prior record variables (PRVs). MCL 777.21(1)(b). MCR 6.425(D) requires that a "[p]roposed scoring of the guidelines shall accompany the presentence report."

In this case, the probation officer prepared a written PSIR for the court's use before the initial sentencing on April 24, 2014. However, there is no SIR attached to the PSIR. There is also no SIR in the record, and the record does not indicate that the OVs and PRVs were ever scored. The omission of the SIR violates the requirements of MCR 6.425(D). Furthermore, without the SIR, there is no indication that the trial court ever scored the variables, which it is required to do. See MCL 777.21(1); *Lockridge*, 498 Mich at 392 n 28 ("Our holding today does nothing to undercut the requirement that the highest number of points possible must be assessed for all OVs, whether using judge-found facts or not."). Our Supreme Court recently clarified in *Lockridge* that, although the guidelines are no longer mandatory, the trial court " 'must consult those Guidelines and take them into account when sentencing.' " *Lockridge*, 498 Mich at 391 (citation omitted). Accordingly, we vacate defendant's sentences and remand for resentencing with a completed and correct SIR.

Defendant argues on appeal that he is entitled to resentencing because the court's scoring of his OVs required it to find facts beyond those established by the jury, that those findings influenced defendant's sentencing guidelines range and, as a result, defendant is entitled to resentencing. However, because the trial court did not file an SIR, defendant is unable to present a challenge to his sentence under *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), and *Lockridge*, 498 Mich at 392, because he has no way of determining what OVs were scored. Therefore, we vacate defendant's sentences and remand for resentencing with the use of a completed and correct SIR.[3]

## III. CONFRONTATION CLAUSE

Defendant makes several arguments in his Standard 4 brief on appeal. Defendant argues that testimony at trial from Carroll regarding statements that Passmore had made to her on the day of the robbery violated his Sixth Amendment confrontation rights. We disagree.

Although defendant objected on hearsay grounds to the out-of-court statements made by Passmore, he never raised a constitutional objection to Carroll's testimony. Consequently, the claim of constitutional error is unpreserved for appellate review. See *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003). Unpreserved constitutional issues are reviewed for plain error. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). Under the plain error rule, defendant must establish that (1) error occurred, (2) the error was plain, that is, clear or obvious, and (3) the plain error affected a substantial right of the defendant. *People v Pipes*, 475 Mich 267, 279; 715 NW2d 290 (2006), citing *Carines*, 460 Mich at 763. Reversal is warranted only when plain error results in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Pipes*, 475 Mich at 279.

The Confrontation Clauses of United States and Michigan Constitutions provide that in all criminal prosecutions, the accused has the right to be confronted with the witnesses against him. US Const, Am VI; Const 1963, art 1, § 20. The United States Supreme Court has held "that the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact," *Coy v Iowa*, 487 US 1012, 1016; 108 S Ct 2798; 101 L Ed 2d 857 (1988), but has also held that "the face-to-face confrontation requirement is not absolute," *Maryland v Craig*, 497 US 836, 850; 110 S Ct 3157; 111 L Ed 2d 666 (1990).

"The Confrontation Clause prohibits the admission of all out-of-court testimonial statements unless the declarant was unavailable at trial and the defendant had a prior opportunity for cross-examination." *Chambers*, 277 Mich App at 10. The United States Supreme Court has held that statements made in furtherance of a conspiracy are statements that, by their nature, are not testimonial. *Crawford v Washington*, 541 US 36, 56; 124 S Ct 1354; 158 L Ed 2d 177 (2004). Because statements in furtherance of a conspiracy are not testimonial, they do not implicate the Confrontation Clause. See *Chambers*, 277 Mich App at 10.

---

[3] At resentencing, the trial court shall sentence defendant in accordance with *Lockridge*, 498 Mich 358.

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is generally inadmissible, MRE 802, but a statement is not hearsay if it is "offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy on independent proof of the conspiracy." MRE 801(d)(2).

With regard to the requirement that the statement be made during the course of the conspiracy, "the conspiracy continues 'until the common enterprise has been fully completed, abandoned, or terminated.' " *People v Martin*, 271 Mich App 280, 317; 721 NW2d 815 (2006) (citation omitted), aff'd 482 Mich 851 (2008). The statement must also further the conspiracy. *Id*. "Although idle chatter will not satisfy this requirement, statements that prompt the listener, who need not be one of the conspirators, to respond in a way that promotes or facilitates the accomplishment of the illegal objective will suffice." *Id*.

The hearsay statements in this case were made by defendant's coconspirator during the course and in furtherance of the conspiracy to rob Foot Action. Thus, they were nontestimonial and, as a result, did not implicate defendant's confrontation rights. During direct examination, the prosecutor elicited testimony from Carroll as follows:

> *Q*. Now, earlier in the day, did you have an occasion to have a conversation with Mr. Passmore?
>
> *A*. Yes.
>
> *Q*. Did he, did he ask you anything about a robbery? How you would respond to a robbery?
>
> *A*. Yes. He, he was saying to be that, basically telling me how I should act or how people should act when they are robbed.
>
> *Q*. Did you initiate the conversation?
>
> *A*. I was telling him about a friend or someone that I know who had been shot and he was just like, I tell people all the time, when you get robbed, don't react, don't do this, don't do that, just give people what they're asking for so you don't cause a scene, you never know, you might get shot like when –
>
> *Q*. Okay.

These statements by Passmore were made on the day of the robbery after Passmore and defendant had agreed to rob the Foot Action and shortly before the conspirators executed their plan. Thus, they were made during the existence of the conspiracy. The statements were made in furtherance of a conspiracy because instructing Carroll, the only uninvolved witness to the robbery, to cooperate with the robbery ensured that the robbery would go smoothly. Passmore's statements "promote[d] or facilitate[d] the accomplishment of the illegal objective" of the conspiracy, which is all that is required. See *Martin*, 271 Mich App at 317. The fact that Carroll was not a conspirator is irrelevant, because the statement need not have been made to another conspirator in order to qualify for admission. See *id*. Thus, because Passmore's statements were

-7-

made in furtherance of a conspiracy, and statements in furtherance of a conspiracy are not testimonial, they do not implicate the Confrontation Clause. See *Crawford*, 541 US at 56. Therefore, defendant fails to establish error in the admission of Passmore's statements through Carroll's testimony. See *Chambers*, 277 Mich App at 10.

## IV. PROSECUTORIAL MISCONDUCT

Next, in his Standard 4 brief on appeal, defendant argues that he was denied his due-process right to a fair trial when the prosecutor vouched for the credibility of his witness and denigrated defense counsel in his closing argument. We disagree.

To preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). A curative instruction is usually sufficient to cure the prejudicial effect of an inappropriate prosecutorial comment. *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). Thus, if defense counsel failed to object, review is foreclosed unless the prejudicial effect of the remark was so great that it could not have been cured by an appropriate instruction. *People v Cross*, 202 Mich App 138, 143; 508 NW2d 144 (1993). Here, defense counsel did not object to the prosecutor's statements or make a request for a curative instruction. Thus, this issue is not preserved for appeal. See *Bennett*, 290 Mich App at 475. When there was no contemporaneous objection and request for a curative instruction, appellate review is limited to ascertaining whether there was plain error that affected substantial rights. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008).

In view of the prosecutor's duty "to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context. *Id*. at 64. " 'The propriety of a prosecutor's remarks depends on all the facts of the case.' " *Id*. (citation omitted). Prosecutorial comments must be read as a whole and evaluated in light of the relationship they bear to the evidence at trial. *Brown*, 279 Mich App at 135.

## A. VOUCHING

Defendant contends that the prosecutor improperly vouched for the credibility of a witness in his closing argument. Defendant argues that because the witness's testimony was critical to the prosecutor's case, and because the prosecutor vouched for her credibility in his closing argument, defendant was deprived his due process right to a fair trial. A prosecutor may not vouch for the credibility of a witness to the effect that he has some special knowledge that the witness is testifying truthfully, *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995); or comment on his or her " 'personal knowledge or belief regarding the truthfulness of the . . . witnesses,' " *Bennett*, 290 Mich App at 478 (citation omitted). A prosecutor is permitted, however, to comment on his or her own witnesses' credibility during closing argument "especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d

631 (2004). Additionally, a "prosecutor is free to argue from the evidence and its reasonable inferences in support of a witness's credibility." *Bennett*, 290 Mich App at 478.

Defendant points to several statements made during the prosecutor's closing argument that he claims constitute prosecutorial misconduct, including: (1) "So, is it really unreasonable to think that Ms. Carroll might've had some preliminary interactions with the person? I mean, it's not like he ran right up and slipped that thing across the counter when he came up . . ."; (2) "Did she act reasonably as a person who's being robbed? Did she act reasonable as he came across and said, give me all you got and was waiving the gun and said, don't call police?"; (3) "I don't know. Would you be calm, cool, and collected if you had a gun waived in your face and they said, give me all your money?"; and, (4) "It's funny though, you know what, Ms. Carroll was never charged. Ms. Carroll is still working at Foot, Foot Action today. Somehow I believe, you know what, she's not really part of this and the Defendant is trying to save his own hide."

The first three statements do not amount to prosecutorial misconduct. In those statements the prosecutor was merely arguing, based on the evidence presented at trial, that Carroll's testimony regarding how she acted during the robbery was reasonable. During cross-examination, defense counsel had attempted to make it appear that Carroll was involved in the conspiracy to rob Foot Action and was therefore lying about her account of the robbery. For example, on cross-examination, defense counsel elicited testimony from Carroll that she had initially greeted defendant as a regular customer when he entered the store even though he was wearing a surgical mask, that she had not called 911 following the robbery, and that she had waited at least a week to tell Foot Action and the police of her suspicions regarding Passmore. In the first three statements the prosecutor was arguing facts in evidence to attempt to make those actions appear reasonable and rebut the implication that Carroll was involved in the conspiracy and had reason to fabricate her testimony. These arguments did not imply that the prosecutor had special knowledge that Carroll had testified truthfully, were permissible arguments based on the evidence in the record, and reasonable inferences in support of Carroll's credibility. See *Bahoda*, 448 Mich at 276; *Bennett*, 290 Mich App at 478.

The more troubling remark by the prosecutor in this case was the fourth statement defendant points to, in which the prosecutor stated in his closing argument that "[s]omehow I believe, you know what, she's not really part of this and the Defendant is trying to save his own hide." This was an expression by the prosecutor of an opinion regarding the truthfulness of the Carroll's testimony, which is not permissible. See *Bennett*, 290 Mich App at 478. However, viewed in context with the prosecutor's comments regarding the reasonableness of Carroll's account of the robbery, it seems that the prosecutor was attempting to make an argument that Carroll had given a probable account of events and had no reason to testify falsely. Nonetheless, regardless of the prosecutor's intention, the comment was improper because it related to his "personal knowledge or belief regarding the truthfulness of the . . . witnesses." *Id*.

Although the prosecutor improperly remarked on his personal belief in Carroll's truthfulness, "[a] miscarriage of justice will not be found if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction." *Cross*, 202 Mich App at 143. Thus, if defense counsel fails to object, like here, review is foreclosed unless the prejudicial effect of the remark was so great that it could not have been cured by an appropriate instruction. See *id*. In this case because the trial judge properly instructed the jurors that lawyers' statements

-9-

are not evidence and to form their own opinions regarding witness credibility, any prejudicial effect of the improper remark was dispelled by the instruction. See *id*.

Even assuming the prosecutor's statement amounted to misconduct that could not have been cured with an appropriate instruction, defendant must still show that the misconduct affected his substantial rights. *People v Goodin*, 257 Mich App 425, 431-432; 668 NW2d 392 (2003). While the prosecutor's comment was improper, a new trial is not warranted in this case because the comment was not outcome-determinative. As the only eyewitness to testify, Carroll's testimony was critical, but her testimony was also corroborated by defendant's own statement to police and testimony at trial. Given the overwhelming evidence of defendant's guilt and the limited possible effect of the comment on the jury's credibility determination, the comment does not rise to the level of error requiring reversal. See *Bahoda*, 448 Mich 261.

## B. DENIGRATION OF DEFENSE COUNSEL

A prosecutor "may not personally attack defense counsel," *People v McLaughlin*, 258 Mich App 635, 646; 672 NW2d 860 (2003), or " 'suggest that defense counsel is intentionally attempting to mislead the jury,' " *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008) (citation omitted).

Defendant points to one statement made during the prosecutor's closing argument that he claims constituted prosecutorial misconduct:

> [Defense counsel] wants to come up and talk about everything under the sun and hopes that you get off track and you latch on to one of these other things. Or I think it's been put another way, where you just throw a whole bunch of stuff, starts with an S, but it's not stuff, up on the wall and let's see what sticks. Because that's what that was when Mr. Tompkins was testifying. A whole lot of stuff.

Later, in his rebuttal to defense counsel's closing argument, the prosecutor also stated that "[defense counsel is] hoping that maybe, just maybe, he's throwing enough stuff up on the wall that you get confused and forget that [the prosecutor] actually proved his case . . . ." The prosecutor was attempting to show that defense counsel was discussing facts that had no bearing on the elements of the crimes in order to create a reasonable doubt. However, the prosecutor's comments did suggest that defense counsel was trying to distract the jury from the truth, and thus, the prosecutor's statements were improper. See *Unger*, 278 Mich App at 238 (finding that the challenged prosecutorial statements were improper since they suggested that the defense counsel was trying to distract the jury from the truth).

However, although defendant did not object to the statements nor ask for a curative instruction, the court did instruct the jury that "[t]he lawyer's [sic] statements and arguments are not evidence." Moreover, under a plain error analysis, defendant has not shown that any error resulted in prejudice. The improper argument that defense counsel was attempting to mislead the jury paled in comparison to defendant's own testimony, in which he admitted that he conspired to rob the Foot Action with Passmore and used a cell phone as a fake gun during the robbery. In addition to defendant's own testimony, other evidence established that Passmore delayed calling

the police after the robbery and that Passmore and defendant had exchanged 12 to 15 texts and calls on the day of the robbery. Therefore, "because there is overwhelming evidence of defendant's guilt, the remarks in question did not affect the outcome of the trial or seriously affect the fairness, integrity, or public reputation of judicial proceedings." *People v Matuszak*, 263 Mich App 42, 55; 687 NW2d 342 (2004). Thus, reversal is not required.

## C. CUMULATIVE EFFECT

The cumulative effect of several minor instances of misconduct can warrant reversal although the individual errors would not. *McLaughlin*, 258 Mich App at 649. In order to merit reversal, the cumulative effect of the errors must undermine the confidence in the reliability of the verdict. *People v LeBlanc*, 465 Mich 575, 591; 640 NW2d 246 (2002). " '[C]umulative error,' properly understood, actually refers to cumulative unfair *prejudice*, and is properly considered in connection with issues of harmless error. Only the unfair prejudice of several *actual* errors can be aggregated to satisfy the standard[] . . . ." *Id.* at 591 n 12. Additionally, in order to reverse based on cumulative error, the underlying errors "must be of consequence." *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001).

Despite the prosecutor's improper comments, defendant has not established that the cumulative effect of the improper prosecutorial conduct deprived him of a fair trial. As discussed above, the specific instances defendant raises were overshadowed by the overwhelming evidence of defendant's guilt. Because the claims of error were harmless, cured by the trial court's instruction, and not "of consequence," they neither separately nor cumulatively warrant a new trial. See, e.g., *McLaughlin*, 258 Mich App at 649 (finding that where the instances of misconduct were too brief to prejudice the defendant and the trial court instructed the prosecutor to refrain from being combative, there was no cumulative effect of the errors warranting reversal); *Knapp*, 244 Mich App at 388 (finding no cumulative error warranting reversal "[b]ecause of the strong evidence of [the] defendant's guilt and because the claimed errors did not compromise [the] defendant's theory of the case").

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, in his Standard 4 brief on appeal, defendant raises several claims of ineffective assistance of counsel. Defendant argues that defense counsel's performance fell below an objective standard of reasonableness when he (1) failed to properly refute statements made by Passmore that shifted full blame for the robbery to defendant and led to the trial court rejecting defendant's original plea agreement, (2) failed to sufficiently inform defendant regarding all of his plea bargaining options and implications of those options, leading defendant to reject a favorable plea offer, (3) failed to present Passmore as an exculpatory witness, (4) failed to object to prosecutorial misconduct, (5) failed to obtain and review defendant's PSIR before his sentencing, and (6) failed to request that an SIR be prepared for defendant's sentencing. As a result, defendant argues that defense counsel's performance amounted to ineffective assistance of counsel. We disagree.

-11-

"[A] defendant must move in the *trial court* for a new trial or an evidentiary hearing to preserve the defendant's claim that his or her counsel was ineffective." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012) (emphasis added). In this case, defendant did not move for a new trial or request a *Ginther*[4] hearing in the trial court,[5] and as a result, the issue is not preserved on appeal. See *id*.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *LeBlanc*, 465 Mich at 579. Generally, the trial court's finding of fact are reviewed for clear error and the questions of constitutional law are reviewed de novo. *Id*. Unpreserved claims of ineffective assistance of counsel can still be reviewed, but review is limited to errors apparent in the record below. *Matuszak*, 263 Mich App at 48.

The United States and Michigan Constitutions guarantee a defendant the right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). " 'A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014) (citation omitted).

"Defense counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' " *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (citation omitted). Counsel's strategic judgments are afforded deference, but strategic choices made after an incomplete investigation are reasonable only to the extent that reasonable professional judgments support the limitation on investigation. See *Trakhtenberg*, 493 Mich at 52.

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[5] Defendant sought a remand in this court for a *Ginther* hearing concerning his counsel's ineffectiveness for (1) not properly refuting statements made by Passmore that shifted full blame for the robbery to defendant and led to the trial court rejecting defendant's original plea agreement; (2) failing to present Passmore as an exculpatory witness at trial, and (3) failing to object to prosecutorial misconduct. The motion was denied because defendant did "not supported his motion to remand with a proper offer of proof or affidavit to show how he would further develop the record at an evidentiary hearing." *People v Tompkins*, unpublished order of the Court of Appeals, entered November 12, 2015 (Docket No. 323193). Defendant now makes those same arguments on appeal. Defendant also brings an additional three ineffective assistance claims in his Standard 4 brief that were not raised in his motion to remand. In his Standard 4 brief on appeal, defendant did request a remand for a *Ginther* hearing to explore the issues of alleged ineffective assistance of counsel. However, his request is not only untimely, MCR 7.211(C)(1)(a), but defendant has again not set forth, by affidavit or offer of proof, additional facts that would be established at a hearing if one was held. MCR 7.211(C)(1)(a)(ii).

-12-

## A.  FAILURE TO INVESTIGATE

Defendant argues that he was denied effective assistance of counsel because defense counsel failed to effectively challenge statements made by Passmore at his own sentencing. Defendant claims that Passmore made statements at his sentencing that "shifted the blame and full responsibility for his involvement in the larceny from his work to [defendant] in exchange for a lower sentence."  Based on these statements, defendant claims that the prosecutor persuaded the trial court to reject defendant's original plea agreement and impose a higher minimum sentence.  Defendant argues that defense counsel's failure to investigate and effectively challenge Passmore's statements fell below an objective standard of reasonableness and constituted ineffective assistance of counsel.

Before trial, defendant informed the court that he intended to plead no contest to the charges in exchange for consideration of a sentence at the low end of his guidelines range. However when defendant appeared prepared to be sentenced, the judge indicated that she intended to sentence defendant to 10 years' imprisonment, which was not at the low end of the guidelines range previously discussed.  The judge indicated she based that decision, in part, on the fact that it seemed like defendant was the "leader" in the conspiracy plot.  The judge indicated that at Passmore's sentencing the day before, she had learned that Passmore might have suffered from mental deficiencies and was "probably ten years younger than [defendant]." Additionally, the court stated that Passmore had made statements that had shifted blame for the conspiracy onto defendant.  The court seemed to indicate that, based on these facts, it had determined that defendant was more culpable than previously thought and had adjusted the sentence accordingly.  However, the court also indicated that it also considered defendant's six prior felonies in comparison to Passmore's clean record in determining the sentence.

Defendant's claim that defense counsel failed to rebut Passmore's statements is not consistent with the record.  At the beginning of the hearing, defense counsel clearly and unequivocally refuted Passmore's version of events by painting Passmore as the leader of the conspiracy instead of defendant.  While the judge was not persuaded by defense counsel's version of events, that did not cause his performance to fall below an objective standard of reasonableness.  See *Matuszak*, 263 Mich App at 61 (holding the fact that that counsel's strategy did not work does not prove that counsel was ineffective).  Additionally, defendant did not provide record support for the claim that Passmore's statements were, in fact, the reason for the imposition of a higher than anticipated sentence.  The trial judge announced several bases for the 10-year sentence.  Defendant's extensive criminal history, defendant's age, and Passmore's diminished capacity could have been a sufficient basis for the 10-year minimum sentence.  Thus, defense counsel's failure to successfully rebut those statements did not fall below an object standard of reasonableness.  See *People v Hoag*, 460 Mich 1, 6; 594 Mich NW2d 57 (1999) (finding that a defendant carries the burden to produce factual support for a claim of ineffective assistance).

## B.  PLEA REJECTION

Next, in his Standard 4 brief on appeal, defendant argues that he was denied the effective assistance of counsel when defense counsel failed to sufficiently inform him of his plea bargaining options and the implications of those options, leading defendant to reject a favorable

plea offer. "A defendant is entitled to the effective assistance of counsel in the plea-bargaining process." *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014). Defense counsel has "the critical obligation" to advise the defendant of the advantages and disadvantages of the plea agreement, and counsel must provide advice during plea negotiations that is sufficient to allow the defendant "to make an informed and voluntary choice between trial and a guilty plea." *Id*. at 594. In order for a defendant to make a successful ineffective assistance claim in this context, he must still meet the two-pronged ineffective assistance standard, and in order to demonstrate prejudice the " 'defendant must show the outcome of the plea process would have been different with competent advice.' " *Id*. at 592. If the prejudice occurred when a defendant rejected the plea offer and stood trial,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*Id*. (citation and quotation marks omitted).]

Defendant originally entered a no-contest plea in exchange for consideration of a sentence at the low end of his guidelines range of 81 to 202 months' imprisonment. However, the court indicated at a later hearing that she intended to sentence defendant to 10 years' imprisonment. At that time defendant indicated that he wanted to withdraw his plea. The prosecutor then calculated defendant's sentencing guidelines range at 108 to 270 months' imprisonment and explained to defendant that "should the judge hear the trial and hear the facts of the case, she's not bound by the low end of the guideline range anymore." Defense counsel agreed that the guidelines range was 108 to 270 months' imprisonment, and informed defendant that meant that he could be sentenced to "more than twenty years." Defense counsel went on, informing defendant that "if you go to trial, this Judge will not punish you for going to trial, no judge would do that, but she also cannot treat you the same as someone who comes forward and accepts responsibility. Did I explain that to you?" Defendant responded, "Absolutely." Defense counsel then informed the court that "[defendant], knowing that the guidelines are one hundred eight to two hundred and seventy, what his exposure is, he wants to exercise that right." The judge again asked defendant if he wished to withdraw his plea and the defendant responded, "Yes, Your Honor, I do."

Defense counsel's performance did not fall below an objective standard of reasonableness. While defendant claims that defense counsel did not adequately inform him of the consequences of rejecting a plea, the record reflects that defense counsel, along with both the prosecutor and trial judge, informed defendant that withdrawing his plea would expose him to up to 20 years in prison for the charges against him and that the judge would not be bound by the low end of the guidelines. Thus, the only record evidence indicates that defense counsel made defendant aware of the consequences of withdrawing his plea. Accordingly, defendant has failed to establish that defense counsel's performance fell below an objective standard of reasonableness or amounted to ineffective assistance of counsel. See *Douglas*, 496 Mich at 591-592.

## C. FAILURE TO CALL A WITNESS

Next, in his Standard 4 brief on appeal, defendant argues that he was denied effective assistance of counsel because defense counsel failed to call Passmore to testify at trial. At trial, defendant attempted to show that Carroll was part of the conspiracy so she could not have actually been afraid when defendant threatened her with the cell phone during the staged robbery. Defendant indicates that if Carroll was not afraid during the robbery, then the prosecutor could not prove that he used force or violence against Carroll or put her in fear as required by the armed robbery statute. Defendant argues that had this trial strategy been effective, the prosecutor would only have been able to prove that he committed a larceny instead of armed robbery. In order to competently present this defense, defendant argues that Passmore's testimony was necessary. Defendant claims Passmore would have "contradict[ed] and challenge[d] [Carroll's] testimony as to whether or not Passmore told her plans about the larceny to remove money from their store and whether or not [defendant] actually pointed a gun at her," thereby supporting defendant's testimony implicating Carroll in the conspiracy. As a result, defendant argues defense counsel's failure to call Passmore as a witness at trial constituted ineffective assistance of counsel.

Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). " 'A substantial defense is one that might have made a difference in the outcome of the trial.' " *Chapo*, 283 Mich App at 371 (citation omitted). "A failed strategy does not constitute deficient performance." *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008).

Defense counsel's failure to call Passmore as an exculpatory witness did not fall below an objective standard of reasonableness. The record demonstrates that defense counsel was aware of Passmore, what potential testimony he offered, and some of the dangers of having him testify. First, before defendant withdrew his guilty plea, he was scheduled to be sentenced. At that sentencing the judge stated that she had information that indicated that Passmore "might've been having some mental deficiencies." Second, during defense counsel's closing argument, he highlighted that the prosecution did not even call Passmore to testify to strengthen their case. In response, the prosecutor explained that he was not hiding something by not putting Passmore on the stand and that he had not called Passmore as a witness because "Mr. Passmore had an attorney and the attorney let me know that [Passmore] doesn't want to testify, he doesn't want to help me." Additionally, both parties mentioned several times throughout the trial that Passmore had pleaded guilty to the charges against him and was now in prison.

The record indicates that defense counsel's failure to call Passmore as a witness was the result of sound professional judgment rather than a failure to investigate. The information discussed above suggests that it entirely probable that defense counsel did not want to call Passmore as a witness because he might not have been a credible witness. It would have been reasonable for defense counsel to anticipate that the prosecutor would question the credibility of Passmore, and defense counsel reasonably may have determined that Passmore's credibility issues would seriously undermine any progress defense counsel had made in presenting Passmore's testimony regarding Carroll's participation in the conspiracy. As a result, it is likely

that defense counsel did not attempt to present testimony from Passmore that Carroll was involved in the conspiracy, but had defendant testify to that effect, which is a sound trial strategy. See *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996) (finding that the failure to call supporting witnesses is not an inherent denial of effective assistance of counsel). Defense counsel arguably could have presented Passmore's testimony to buttress defendant's claims that Carroll was involved in the conspiracy. However, counsel's failure to do so did not render his performance below an objective standard of reasonableness. See *Rockey*, 237 Mich App at 76.

Accordingly, this is not an instance in which counsel failed to investigate the possibility of a potentially exculpatory witness, which deprived the defendant of a substantial defense. See *People v Pickens*, 446 Mich 298, 327; 521 NW2d 797 (1994) (holding that defense counsel's conduct in failing to file notice of an alibi witness despite knowing of the possible testimony well before trial was conduct that fell below an objective standard of reasonableness). Because counsel's performance is not measured with the benefit of hindsight, *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009), defendant cannot show that any failure on the part of defense counsel to call Passmore as an exculpatory witnesses fell below an objective standard of reasonableness. See *Rockey*, 237 Mich App at 76.

Even if defense counsel's failure to call Passmore as a witness at trial fell below an objective standard of reasonableness, defendant has not demonstrated the requisite prejudice necessary to establish a claim of ineffective assistance of counsel. "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *Dixon*, 263 Mich App at 398 (citation omitted). The record shows that defendant advanced his theory of defense without calling Passmore as a witness. Thus, defendant was not deprived of a substantial defense, and defense counsel's decision not to call Passmore as a witness did not constitute ineffective assistance. See *id*.

### D. FAILURE TO OBJECT TO PROSECUTORIAL MISCONDUCT

In his Standard 4 brief on appeal, defendant further argues that defense counsel's failure to object to prosecutorial misconduct fell below an objective standard of reasonableness and constituted ineffective assistance of counsel. As discussed above, defendant points to four statements in which he argues the prosecutor improperly vouched for the credibility of Carroll. However, only one statement was an improper remark regarding the prosecutor's personal belief of Carroll's truthfulness. Defendant also pointed to several remarks made by the prosecutor in his closing argument that defendant claims improperly denigrated defense counsel and defendant's theory of the case. Because the prosecutor committed misconduct by repeatedly suggesting that defense counsel sought to mislead the jury, those statements were improper. Defendant argues that defense counsel's failure to object to those instances of prosecutorial misconduct amounted to ineffective assistance of counsel.

"[T]his Court neither substitutes its judgment for that of counsel regarding matters of trial strategy, nor makes an assessment of counsel's competence with the benefit of hindsight." *Matuszak*, 263 Mich App at 58. Because the improper comments were made at the end of trial during closing arguments, just before the instructions by the trial court, "counsel may have considered an objection to be superfluous to the trial court's instructions that the statements of

-16-

counsel were not evidence and that the jury should decide the case only on the basis of the evidence properly admitted." *Id*. It is presumed that the jury followed the court's instruction. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Additionally, as discussed above, while the prosecutor's comments may have been improper, defendant failed to establish any prejudice caused by those statements which would have necessitated an objection. Thus, defendant cannot overcome the strong presumption that counsel's performance was trial strategy nor establish that, but for counsel's failure to object to the improper remarks of the prosecution, the result of the proceeding would have been different. As a result, defense counsel's failure to object to the instances of prosecutorial misconduct did not fall below an objective standard of reasonableness or amount to ineffective assistance of counsel. See *Trakhtenberg*, 493 Mich at 51.

### E. FAILURE TO REVIEW PSIR AND REQUEST SIR

In his Standard 4 brief on appeal, defendant also claims defense counsel's performance fell below an objective standard of reasonableness when he failed to obtain and review defendant's PSIR before sentencing. While defendant claims that defense counsel failed to "obtain and review [defendant's] presentence investigation report prior to the sentencing hearing," there is no support for that contention in the record. Defendant originally pleaded guilty to the charges against him. At the originally scheduled sentencing hearing, defendant and defense counsel appeared for sentencing. While defendant eventually withdrew his plea at that hearing and was not actually sentenced, the trial judge did ask defense counsel "what would you like to tell me about this report?" Defense counsel responded, "With respect to the report, the only change that needs to be made is the age of [defendant]; he is not thirty four, he's thirty two." After the change to defendant birthdate was made, defense counsel stated, "And other than that, Your Honor, there are no other changes to be made." Contrary to defendant's claim, these statements imply that defense counsel did in fact obtain and review defendant's PSIR before his sentencing hearing.

Additionally, after the guilty verdict, the trial judge immediately sentenced defendant. Before sentencing defendant, the trial judge asked, "So, you reviewed the pre-sentence report; is that correct?" Defendant's counsel responded, "Yes, Your Honor," and indicated that nothing in the report needed to be changed. Again, contrary to defendant's claim, these statements expressly indicate that defense counsel did in fact obtain and review defendant's PSIR before his sentencing hearing. A defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel, *Hoag*, 460 Mich at 6, and in the instant case, there is no record evidence to support defendant's claim. Because it is clear from the record that defense counsel did obtain and review defendant's PSIR before both sentencings, defendant has failed to establish the factual predicate for his claim. See *id*.

Last, in his Standard 4 brief on appeal, defendant argues that defense counsel's performance fell below an objective standard of reasonableness when he failed to request that an SIR be prepared for defendant's sentencing. We need not address the issue in light of our decision to vacate defendant's sentences and remand for resentencing. To the extent that defendant raises any additional arguments in his Standard 4 brief that are not specifically addressed in this opinion, we have reviewed and rejected all of his arguments.

We affirm defendant's convictions, but vacate defendant's sentences and remand for resentencing in accordance with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Douglas B. Shapiro