*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SONYA MARIE CODY,

        Defendant-Appellant.

UNPUBLISHED
April 14, 2022

No. 354178
Isabella Circuit Court
LC No. 19-000916-FH

Before: RONAYNE KRAUSE, P.J., and MURRAY and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right her jury-trial convictions of embezzlement by an agent or employee of $1,000 or more but less than $20,000, MCL 750.174(4)(a), and illegal sale or use of a financial transaction device, MCL 750.157q. Defendant was sentenced to serve 11 months in jail and three years of probation. We affirm.

## I. FACTS

This appeal arises from defendant's embezzlement from and inappropriate use of a company debit card belonging to her then-employer, Stone Lodge Memory Care, a licensed adult foster care facility. Defendant was in charge of managing the day-to-day operations of Stone Lodge, which included managing financial records and purchasing supplies with Stone Lodge's debit card. After Stone Lodge's owner noticed suspicious debit-card purchases at Walmart, she called the police. Police Chief Luke Sawyer obtained 19 surveillance videos from Walmart in which defendant was seen purchasing various items at self-checkout lanes, using the cash-back feature to withdraw cash, and placing the cash in her personal wallet. In total, receipts from these types of transactions amounted to more than $28,000.

Stone Lodge's owner testified that defendant was not authorized to receive cash back while making purchases with Stone Lodge's debit card. The owner also testified that the vast majority of the items that defendant was seen purchasing in the videos with Stone Lodge's debit card—such as women's clothing and a wristwatch—were not used at Stone Lodge because Stone Lodge did not typically purchase personal items for residents. The owner explained that if Stone Lodge needed to purchase personal items for residents, it invoiced the resident's family to seek

reimbursement. In addition, Stone Lodge's owner and two employees testified that Stone Lodge rarely used petty cash, and had a maximum of $25 in petty cash at any time. The Stone Lodge employees also testified that defendant was frequently absent from work and that defendant informed them that she went to the casino frequently.

Defendant testified that all of the purchases she made at Walmart and other various stores were for Stone Lodge and its residents, and that all of the cash she received as cash back was placed in Stone Lodge's petty cash and used for various events at the facility. According to defendant, Stone Lodge went through $1,400 to $2,000 in petty cash per month.

The jury convicted defendant as stated above, and this appeal followed.

## II. ANALYSIS

### A. HEARSAY TESTIMONY

Defendant first argues that Chief Sawyer's testimony was impermissible hearsay that did not fall under any of the hearsay exceptions.

Defendant did not object to Chief Sawyer's testimony, so this issue is unpreserved. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Unpreserved errors are reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To show that plain error affected substantial rights, a defendant must show that (1) error occurred, (2) the error was obvious, and (3), the error caused "prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Even if a defendant establishes all three elements, reversal is only warranted if the plain error "resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; alteration in original).

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is not admissible except as provided in the rules of evidence. MRE 802.

Defendant argues that Chief Sawyer's following testimony was hearsay without an exception: (1) that Stone Lodge's owner said that defendant embezzled funds and that defendant was the only person with access to Stone Lodge's debit card, (2) that Stone Lodge's owner said that defendant had a problem with absenteeism at work, (3) that Stone Lodge's owner believed several transactions from Walmart were fraudulent, (4) that two Stone Lodge employees said defendant was the only person with access to the Stone Lodge debit card, that defendant went to the casino often, and that defendant might have missed work because she was going to the casino, (5) that a Walmart employee identified defendant in surveillance videos and photos, (6) that the Walmart employee described the way defendant used Stone Lodge's debit card as "odd," (7) and that the Walmart employee said that he saw the type of financial crime involved in this case "quite often" and that defendant's actions were consistent with that activity.

The prosecution concedes that Chief Sawyer's testimony about the statements made by Stone Lodge's owner and its two employees was hearsay without an exception, but the parties disagree about whether Chief Sawyer's testimony about statements made by the Walmart employee was hearsay. One of the contested statements—that Chief Sawyer supposedly said that the employee "identified [defendant] from surveillance videos and photos"—does not accurately reflect the chief's testimony. Chief Sawyer testified that the employee provided the chief with videos and photos recorded by Walmart, and that from those Chief Sawyer himself identified defendant. Chief Sawyer did not testify that the employee identified defendant in the videos or photos.

Similarly, contrary to defendant's assertions on appeal, Chief Sawyer did not testify that the Walmart employee told the chief that "he saw the type of financial crimes involved in this case 'quite often' and [defendant's] actions were consistent with that activity." Rather, Chief Sawyer speculated that the employee likely saw financial crimes in the course of his duty often, not that the employee said this to him. Similarly, the chief never testified that the employee told him that defendant's "actions were consistent with" the type of financial crime involved in this case.

The final at-issue statement is Chief Sawyer's testimony that the Walmart employee told the chief that he found defendant's behavior of making multiple small purchases with the cash-back option to be "odd." We agree with the prosecution, however, that this testimony was not hearsay because it was not elicited to prove the truth of the matter asserted. The testimony was in response to questioning about whether the Walmart employee provided Chief Sawyer with any additional information. It thus appears that, in context, the testimony was elicited to explain why Chief Sawyer continued his investigation—someone familiar with common customer behaviors found defendant's behavior of making multiple "small purchases with the cash back option" to be "odd," prompting the chief to look into the issue further. Because this testimony was not admitted to prove the truth of the matter asserted, it was not hearsay. See *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007) (explaining that "a statement offered to show why police officers acted as they did is not hearsay").[1]

---

[1] Defendant also argues that Chief Sawyer's testimony about what the Walmart employee said violated the Confrontation Clause because the employee did not testify at trial. See US Const, Am VI; Const 1963, art 1, § 20. Most of Chief Sawyer's disputed testimony cannot implicate the Confrontation Clause because the chief did not testify as alleged by defendant—Chief Sawyer did not testify that the Walmart employee (1) "identified [defendant] from surveillance videos and photos" or (2) said that "he saw the type of financial crimes involved in this case 'quite often' and [defendant's] actions were consistent with that activity." As for Chief Sawyer's testimony that the Walmart employee told him that he found defendant's behavior "odd," this testimony was elicited to explain why Chief Sawyer continued his investigation, and therefore does not violate the Confrontation Clause. See *People v Henry (After Rem)*, 305 Mich App 127, 153-154; 854 NW2d 114 (2014) (explaining that "a statement offered to show the effect of the out-of-court statement on the hearer does not violate the Confrontation Clause") (quotation marks and citation omitted).

Accordingly, only Chief Sawyer's testimony about what the Stone Lodge owner and its two employees said was hearsay. The question now becomes whether the erroneous admission of this hearsay testimony affected defendant's substantial rights. We conclude that it did not.

Without the inadmissible hearsay testimony, there was still sufficient evidence demonstrating that the elements of embezzlement by an agent or employee were met: the money belonged to Stone Lodge; defendant used Stone Lodge's debit card to gain access to the money, and she only had the debit card because she was in a position of trust with Stone Lodge as an employee; and there was evidence that defendant converted the money for her own use without Stone Lodge's consent with an intent to defraud or cheat Stone Lodge. See *People v Schrauben*, 314 Mich App 181, 198; 886 NW2d 173 (2016) (listing the elements of embezzlement by an employee). Defendant was identified in 19 videos at Walmart using the Stone Lodge debit card to purchase items that were not for use at Stone Lodge; defendant was seen in these videos wearing items that closely resembled her prior purchases, like some clothing and a watch; and defendant was seen taking out large sums of cash back during these transactions and placing this cash in her personal wallet. Defendant's testimony regarding her use of petty cash and explanations for her purchases was contradicted by other testimony, and there were no contemporaneous records or receipts verifying the explanations defendant gave for purchases and cash-back transactions. Finally, there was testimony that defendant intentionally concealed her cash-back transactions from Stone Lodge's accounting software, which supported a finding that defendant intended to defraud or cheat Stone Lodge of this money. In light of this other evidence against defendant, the error of admitting Chief Sawyer's inadmissible hearsay testimony did not result in the conviction of an innocent person because, even without the inadmissible hearsay evidence, there was sufficient evidence to convict defendant of embezzlement and unlawful use of a financial transaction device.

Further, the error of admitting the inadmissible hearsay testimony did not seriously affect the fairness, integrity, or public reputation of the trial or result. *Carines*, 460 Mich at 763. As stated above, there was sufficient evidence to convict defendant without the complained-of evidence, and therefore, no prejudice occurred. Defendant argues that Chief Sawyer's inadmissible hearsay testimony was particularly damaging because it was later repeated by the source of the statements—Stone Lodge's owner and two employees—and that this repetition of the statements bolstered the credibility of Stone Lodge's owner and two employees. Contrary to defendant's argument, the fact that Stone Lodge's owner and two employees were able to testify about their statements, and, importantly, that defendant was given the opportunity to cross-examine those witnesses about their statements, lessened the damage that the inadmissible hearsay testimony had on the fairness, integrity, or public reputation of the trial. Accordingly, we conclude that the evidentiary error of allowing into evidence Chief Sawyer's inadmissible hearsay testimony did not seriously affect the fairness, integrity, or public reputation of the trial or result.

## B. OPINION TESTIMONY

Defendant argues that Chief Sawyer also gave improper expert-opinion testimony when he testified about "the accuracy of insurance investigations" because he was "simply not qualified to render an opinion about" that topic under MRE 702. We disagree that the at-issue testimony was expert testimony subject to MRE 702.

MRE 702 governs expert testimony and states:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

MRE 701 governs the admission of non-expert, lay-witness testimony, and states:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Testimony is lay-opinion testimony not subject to MRE 702 if it "do[es] not involve highly specialized knowledge, and [is] largely based on common sense." *People v McLaughlin*, 258 Mich App 635, 658; 672 NW2d 860 (2003).

Chief Sawyer testified that he was previously involved in cases where someone filed an insurance claim, and that insurance companies generally conduct their own investigation. He then stated that he was aware that the insurance company in this case covered Stone Lodge's claim, agreed with the prosecutor's statements that "insurance companies are not in the habit of giving away money," and agreed that the insurance company's investigation in this case likely determined that embezzlement occurred. Chief Sawyer did not testify that he believed embezzlement occurred because the insurance company paid the claim, nor that he believed defendant embezzled money from Stone Lodge.

This testimony was admissible opinion testimony because it was based on Chief Sawyer's own rational perception of insurance investigations and helped the jury determine whether embezzlement occurred. Chief Sawyer's testimony that insurance companies conduct investigations before paying out claims was based on common knowledge and his prior experience, not highly specialized knowledge. See *McLaughlin*, 258 Mich App at 658. His testimony that the investigation in this case likely determined that embezzlement occurred was a logical inference rationally based on the fact that the insurance company covered Stone Lodge's claim. Contrary to defendant's argument on appeal, none of Chief Sawyer's testimony was overly dependent upon scientific, technical, or other specialized knowledge such that it was subject to MRE 702.[2]

---

[2] Defendant argues that the error of allowing Chief Sawyer to give expert testimony without being qualified as an expert was particularly problematic because the testimony came from a police officer. Again, Chief Sawyer did not give expert testimony, so there was no error in this respect.

-5-

## C. PROSECUTORIAL MISCONDUCT

Defendant next argues that the prosecution engaged in prosecutorial misconduct by asserting during closing argument that the insurance company, through its investigation, determined that wrongdoing had occurred because it paid Stone Lodge's claim. Defendant did not object to the prosecution's statements or request a curative instruction, and therefore, this issue is not preserved for appellate review. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Unpreserved errors are reviewed for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Anderson*, 331 Mich App 552, 565; 953 NW2d 451 (2020) (quotation marks and citation omitted). "Generally, prosecutors are given great latitude regarding their arguments," but there are limits. *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). For instance, while a prosecutor can argue the evidence and all reasonable inferences from that evidence, *id*, a prosecutor cannot mischaracterize the evidence or argue facts not in evidence, *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001).

The prosecution's at-issue remarks in this case did not rise to the level of prosecutorial misconduct. Stone Lodge's owner testified that Stone Lodge had "employee dishonesty coverage," and that the insurance company covered Stone Lodge's claim under its policy. From this, it was reasonable to infer that the insurance company found evidence of wrongdoing—the company covered Stone Lodge's claim because it found a basis for doing so. Moreover, the prosecution was clear that the insurance company's payment of this claim was not evidence that *defendant* embezzled from Stone Lodge. Contrary to defendant's argument, the prosecution did not argue facts not in evidence or improperly vouch for its case-in-chief by making these statements. Rather, the prosecution's closing remarks were properly limited to the evidence and reasonable inferences from that evidence that related to the prosecution's theory of the case. See *Mullins*, 322 Mich App at 172.

## D. OTHER-ACTS EVIDENCE

Defendant next argues that the prosecution improperly presented other-acts evidence that was irrelevant, unfairly prejudicial, and admitted without a proper purpose, and that it did so without providing reasonable notice of the prosecution's intent to present the evidence or good cause for waiting until trial to present the evidence. The other-acts evidence concerned defendant's gambling and absenteeism from work. Defendant objected to the admission of this evidence on relevancy grounds, but did not object on grounds that the evidence was unfairly prejudicial, did not have a proper non-propensity purpose, or was improperly noticed. Thus, to the extent that

---

Moreover, the jury was given a limiting instruction regarding how to consider police officer testimony, and courts presume that juries follow their instructions. *People v Bruner*, 501 Mich 220, 228; 912 NW2d 514 (2018).

defendant challenges the relevance of the evidence, the issue is preserved, but to the extent that defendant argues that the evidence was unfairly prejudicial, admitted without a proper purpose, or was improperly noticed, those issues are unpreserved. See *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004) ("An objection based on one ground is usually considered insufficient to preserve an appellate attack based on a different ground."). Preserved evidentiary issues are reviewed for an abuse of discretion, *People v Dobek*, 274 Mich App 58, 93; 732 NW2d 546 (2007), while unpreserved errors are reviewed for plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 763-764.

The prosecution concedes on appeal that the challenged evidence was other-acts evidence, and so we assume for purposes of this opinion that it is. The admissibility of other-acts evidence is governed by MRE 404(b)(1), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

This rule is "inclusionary rather than exclusionary," meaning that MRE 404(b) only bars other-acts evidence in circumstances where "it is offered solely to show the criminal propensity of an individual to establish that he acted in conformity therewith." *People v VanderVliet*, 444 Mich 52, 65; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994) (quotation marks and citation omitted; emphasis omitted).

Along with being admitted for a proper purpose, other-acts evidence, like all evidence, must be relevant under MRE 401 and must not be unfairly prejudicial under MRE 403. See *Dobek*, 274 Mich App at 85. Relevance can be demonstrated through "reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence." *Id*. at 86 (quotation marks and citation omitted). Under MRE 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Kowalski*, 492 Mich 106, 137; 821 NW2d 14 (2012) (quotation marks and citation omitted).

In this case, several witnesses testified about defendant's visits to the casino and regular absence from work. Namely, Chief Sawyer testified about defendant's withdrawals from ATMs at the casino, sometimes withdrawing almost her entire paycheck at the casino shortly after it was deposited and some of those transactions taking place during normal work hours. The chief also testified that some Stone Lodge employees said that defendant enjoyed frequenting the casino which was why she may have been having problems with attendance at work. Other witnesses testified that defendant talked to them about going to the casino and how they had noticed recent problems with defendant's attendance at work.

Contrary to defendant's arguments on appeal, this evidence was relevant under MRE 401 and was admitted for the proper, non-propensity purpose of establishing defendant's motive for embezzling. The evidence tended to support that defendant embezzled money from Stone Lodge to secure additional funds to fuel a possible gambling habit. Other evidence showed that defendant's use of Stone Lodge's debit card overlapped with days that she withdrew money at the casino, further tying defendant's embezzlement to a possible gambling habit. Although motive is not an essential element, evidence of motive is always relevant, *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008), and MRE 404(b) specifically lists motive as a proper, non-propensity purpose for admitting other-acts evidence. Further, defendant's absence from work tended to establish defendant's opportunity to embezzle funds, which is also relevant and a proper, non-propensity purpose for admitting the evidence.

Next, contrary to defendant's argument on appeal, the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice to defendant. Defendant fails to explain why she believes that this evidence would be given undue or preemptive weight by the jury such that it would unfairly prejudicial. See *Kowalski*, 492 Mich at 137. Regardless, even accepting that presenting the evidence to the jury carried some risk of causing unfair prejudice, evidence of defendant's motive for embezzling funds from Stone Lodge and her opportunity to do so were both highly probative, and defendant does not explain why any potential risk of unfair prejudice would *substantially outweigh* this probative value such that the evidence should have been excluded under MRE 403.[3]

Defendant also points out, and the prosecution concedes, that defendant was not given proper notice of the other-acts evidence presented at her trial. Under MRE 404(b)(2), a prosecutor generally must provide reasonable notice of the intent to present other-acts evidence:

> The prosecution in a criminal case shall provide written notice at least 14 days in advance of trial, or orally on the record later if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence.

For defendant to be entitled to appellate relief on the basis of the prosecution's failure to comply with MRE 404(b)(2), she must establish that this error was, more probably than not, outcome determinative. See *People v Jackson*, 498 Mich 246, 278; 869 NW2d 253 (2015). The lack of proper pretrial notice in this case did not result in the admission of substantively improper

---

[3] Defendant also argues that it was error for the trial court to not give the standard limiting instruction applicable to other-acts evidence. See M Crim JI 4.11. We disagree. A trial court need only consider giving such a limiting instruction *upon request*. See *People v Mardlin*, 487 Mich 609, 616; 790 NW2d 607 (2010) (explaining that "upon request, the trial court may provide a limiting instruction to the jury under MRE 105 to specify that the jury may consider the evidence only for proper, noncharacter purposes"). It was not error for the trial court to not give a limiting instruction when no such instruction was requested. Whether trial counsel's failure to request such an instruction amounted to ineffective assistance is a different issue, which we address in Section II.F.

other-acts evidence because the evidence was admissible as discussed above. Thus, despite not being afforded the opportunity to argue against the admission of the evidence before trial, defendant has not established that such arguments would have been availing and that the evidence would not have been admitted or would have been limited in some way. See *id*. Further, while defendant may have been surprised by the introduction of this evidence at trial, she has not explained "how [she] would have approached trial or presented [her] defense differently had [she] known in advance that" the evidence would be admitted. *Id*. at 278-279. For these reasons, we, like our Supreme Court in *Jackson*, "cannot conclude that the defendant suffered outcome-determinative prejudice from the prosecution's failure to follow, and the trial court's failure to apply, MRE 404(b)(2)." *Id*. at 279. We lastly note that even without the evidence of defendant's gambling and absenteeism from work, the evidence against defendant was overwhelming. The record, as a whole, leaves no doubt that the erroneous handling of the other-acts evidence was harmless and did not undermine the reliability of the verdict against defendant. See *id*. at 280.

## E. CUMULATIVE EFFECT

Defendant argues that the cumulative effect of the errors addressed above deprived her of a fair trial. We disagree.

"The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *Dobek*, 274 Mich App at 106. Only actual errors may be aggregated to demonstrate cumulative error. *People v Bahoda*, 448 Mich 261, 292 n 64; 531 NW2d 659 (1995).

The only errors that occurred at trial were the admission of Chief Sawyer's inadmissible hearsay testimony and the prosecution's failure to properly notice the other-acts evidence. We conclude that, despite these errors, defendant was not denied a fair trial. The evidence against defendant was overwhelming. Stone Lodge's owner testified that defendant was not permitted to use the cash-back option of the debit card, yet surveillance videos showed defendant doing so repeatedly, and then placing the money in her personal wallet. The videos also showed defendant buying numerous personal items that Stone Lodge's owners and its employees agreed were clearly not for Stone Lodge because personal items for the residents were not provided by the facility. Moreover, the videos seemed to show defendant wearing some of the items—like certain clothing and a watch—that video surveillance recorded her buying on earlier occasions. Further, while defendant said that she placed all the money she withdrew using the debit card into a petty-cash folder that Stone Lodge kept in the facility, Stone Lodge's owner and its other employees testified that Stone Lodge only had up to $25 in petty cash at any given time, not thousands of dollars like defendant said. Also, while defendant recorded her transactions with Stone Lodge's debit card in Stone Lodge's accounting software, she never documented the money that she withdrew. Instead, when she recorded a purchase, she would list the cost of the item as the full transaction amount including the cash withdrawal as part of the item's cost, thereby concealing that she withdrew any cash. "Because of the strong evidence of defendant's guilt and because the claimed errors did not compromise defendant's theory of the case, we find that no reasonable juror would have voted for acquittal if these errors did not occur," and thus "the cumulative effect of the errors do not require reversal." *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001)

## F. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant lastly argues that defense counsel provided ineffective assistance by failing to raise all of the alleged errors discussed above during defendant's trial. We disagree.

Claims of ineffective assistance of counsel present mixed questions of fact and law. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). Factual findings are reviewed for clear error, while legal conclusions are reviewed de novo. *Id.* No evidentiary hearing was held in this case, so our review is for errors apparent from the record. *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012).

We first note that defendant's arguments that her trial counsel provided ineffective assistance by (1) failing to object to Chief Sawyer's testimony as it pertained to the Walmart employee on grounds that it was hearsay and violated the Confrontation Clause, (2) failing to object to Chief Sawyer's testimony about the insurance company's investigation on grounds that he was not qualified to provide that testimony under MRE 702, (3) failing to object to the prosecutor's closing argument on grounds that it was not supported by facts in evidence and improperly vouched for the prosecution's case-in-chief, and (4) failing to object to the other-acts evidence on grounds that it was inadmissible under MRE 401, MRE 403, and MRE 404(b)(1), are all without merit. Any objection on those grounds would have been meritless for the reasons explained throughout this opinion, and counsel cannot be found ineffective "for failing to raise meritless or futile objections." *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015). The only ineffective assistance claims that remain are whether defense counsel provided ineffective assistance by (1) failing to object to Chief Sawyer's hearsay testimony about statements made by Stone Lodge's owner and the two Stone Lodge employees, and (2) failing to object to the lack of notice about the other-acts evidence under MRE 404(b)(2) and request a limiting instruction.

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability exists that the outcome of the proceeding would have been different but for trial counsel's errors." *Head*, 323 Mich App at 539 (quotation marks and citation omitted; alteration removed). "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). This Court presumes counsel was effective, and defendant carries a heavy burden of proving otherwise. *Head*, 323 Mich App at 539.

We agree with defendant that it was objectively unreasonable for her trial counsel to not object to Chief Sawyer's hearsay testimony, to not object to the lack of notice for the other-acts evidence under MRE 404(b)(2), and to not request a limiting instruction.

The prosecution readily concedes on appeal that portions of Chief Sawyer's testimony were hearsay without an exception, and there was no strategic reason for defense counsel to allow that testimony to come in as evidence. Likewise, the prosecution readily concedes that it failed to comply with the notice requirements in MRE 404(b)(2), and, again, there was no strategic reason for defense counsel not raising this issue before the trial court. Finally, because the prosecution admitted other-acts evidence, defense counsel could have requested a limiting instruction, see

*People v Mardlin*, 487 Mich 609, 616; 790 NW2d 607 (2010), and there was no strategic reason for failing to do so.

Despite defense counsel's performance, there is not a reasonable probability that, but for defense counsel's errors, the outcome of defendant's trial would have been different, and the errors do not otherwise undermine our confidence in the verdict.

Chief Sawyer's hearsay testimony was minor and would have come into evidence anyway through the testimonies of Stone Lodge's owner and employees. While defendant contends that the chief's hearsay testimony bolstered the credibility of the other witnesses by corroborating what they said, this assertion is unconvincing. Some of the hearsay statements were not in dispute (such as the fact that Stone Lodge's owner believed that defendant embezzled from the company), and other statements were corroborated among Stone Lodge's owners and employees themselves (like the fact that only defendant had access to Stone Lodge's debit card). The fact that Chief Sawyer's testimony also reflected this did not add further credibility to their testimonies. Further, that defendant had the opportunity to cross-examine the source of the hearsay testimony—Stone Lodge's owner and employees—lessened the unreliability associated with hearsay testimony generally. Lastly, and most importantly, even without the hearsay testimony, the evidence against defendant was still overwhelming. For these reasons, defense counsel's failure to object to Chief Sawyer's inadmissible hearsay testimony does not undermine our confidence in the verdict, and we are not convinced that there is a reasonable probability that, but for defense counsel's failure to object to the testimony, the outcome of the proceedings would have been different.

Likewise, defense counsel's failure to object to the lack of notice of the other-acts evidence does not undermine our confidence in the verdict. Defendant has not presented any availing arguments to support that the other-acts evidence would not have been admitted even had defense counsel raised this objection. It therefore appears that the evidence would have ultimately been admitted regardless of whether defense counsel objected. Accordingly, we cannot conclude that there is a reasonable probability that the outcome of the proceedings would have been different but for defense counsel's failure to object.

Lastly, defense counsel's failure to request a limiting instruction for the other-acts evidence does not undermine our confidence in the verdict. Again, this was not a close case. Even without considering the other-acts evidence, the evidence against defendant was overwhelming. We do not believe that there is a reasonable probability that the outcome of the proceedings would have been different had the trial court given a limiting instruction for the other-acts evidence.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Christopher M. Murray
/s/ Colleen A. O'Brien