PEOPLE v CHAMBERS

Docket No. 271216. Submitted October 2, 2007, at Detroit. Decided October 9, 2007, at 9:00 a.m.

Billy Joe Chambers was convicted by a jury in the Macomb Circuit Court of armed robbery, MCL 750.529, and assault with a dangerous weapon, MCL 750.82(1), for beating and robbing a woman at gunpoint. The court, Edward A. Servitto, Jr., J., sentenced the defendant to prison terms of 81 to 135 months for the armed robbery conviction and 12 to 48 months for felonious assault. The defendant appealed.

The Court of Appeals *held*:

1. The defendant's convictions and sentences do not violate his constitutional protections against double jeopardy because armed robbery requires proof of actions in the course of committing a larceny, which is not required to establish assault with a dangerous weapon; similarly, assault with a dangerous weapon requires proof of the actual use of a dangerous weapon, which armed robbery does not. Therefore, armed robbery and assault with a dangerous weapon are not the same crime for double-jeopardy purposes.

2. The court's admission of a detective's testimony that he received a tip by telephone that allowed him to identify the defendant did not violate the defendant's right to confront the witnesses against him because the statement was offered not to establish the truth of the informant's tip but to establish the circumstances leading to the defendant's arrest. Defense counsel was not ineffective for failing to object to the testimony because such objection would have been futile.

Affirmed.

CONSTITUTIONAL LAW — DOUBLE JEOPARDY — ARMED ROBBERY — ASSAULT WITH A DANGEROUS WEAPON.

Armed robbery and assault with a dangerous weapon are not the same crime for double-jeopardy purposes because each requires proof of an element that the other does not (US Const, Am V; Const 1963, art 1, § 15; MCL 750.82[1], 750.529).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Eric J. Smith*, Prosecuting Attorney, *Robert Berlin*, Chief Appellate Attorney, and *Betsy B. Mellos*, Assistant Prosecuting Attorney, for the people.

*Neil J. Leithauser* for the defendant.

Before: MURPHY, P.J., and SMOLENSKI and SCHUETTE, JJ.

MURPHY, P.J. Following a jury trial, defendant was convicted of armed robbery, MCL 750.529, and assault with a dangerous weapon, i.e., felonious assault, MCL 750.82(1). He was sentenced to 81 to 135 months' imprisonment for the armed robbery conviction and 12 to 48 months' imprisonment for the felonious assault conviction. Defendant argues that his convictions and sentences violate his constitutional protections against double jeopardy, US Const, Am V; Const 1963, art 1, § 15. He further argues that his Sixth Amendment right to confront witnesses against him was violated when information given by a nontestifying confidential informant to the police was elicited and admitted into evidence at trial. Defendant makes an accompanying claim that counsel was ineffective for failing to object to the Confrontation Clause violation. Pursuant to *People v Smith*, 478 Mich 292; 733 NW2d 351 (2007), we hold that there was no double jeopardy violation because armed robbery and felonious assault do not constitute the "same offense" given that each requires proof of an element that the other does not. Further, we hold that there was no Confrontation Clause violation because the out-of-court testimonial statement by the confidential informant was not admitted to establish or prove the truth of the matter asserted. Accordingly, counsel

was not ineffective for failing to raise what would have been a futile objection. We thus affirm defendant's convictions and sentences.

## I. BASIC FACTS

On Thursday, December 22, 2005, the female victim drove to a medical center to withdraw cash from a nearby automated teller machine (ATM). She parked her car in the medical center's parking lot and walked to the ATM. The victim inserted her ATM card into the ATM and punched in her personal identification number. The ATM dispensed the requested amount and returned the victim's ATM card. As she waited for her receipt, "there was somebody on [her] back." She had not heard anyone approach the ATM, nor had she heard another car drive into the parking lot. This person, a man later identified as defendant from photographs developed from a tape produced by the ATM's video surveillance camera, placed a gun on the side of the victim's face and demanded her money. The victim held out the money that she had withdrawn from the ATM, and defendant snatched the cash and her ATM card from her hand.

Defendant then hit the victim in the back of the head, and she fell to the ground. She was unsure whether defendant struck her with his hand or with an object. Defendant proceeded to kick the victim as she lay on the ground and called her a derogatory name. He repeatedly ordered her to stand up, but each time she attempted to stand, defendant kicked her back down. As defendant was kicking the victim, he demanded her purse. The victim replied that she did not have a purse. Hearing this, defendant again kicked her and stepped on her legs. According to the victim, defendant then demanded something else from her, but, not hearing or

understanding what was demanded, she turned onto her back and told defendant that she had nothing. Defendant stared at her, and the victim noticed that he was holding a gun. The weapon was pointed straight at her. The victim told defendant that her purse was in her car, and he kicked her one last time before walking to her car. The victim then got up and ran for assistance. Defendant fled the area.

The police were able to obtain three still photographs from the video surveillance tape, and they were aired on local television stations. An FBI agent later contacted the detective working the case and told him that one of the agent's informants recognized and identified defendant from the photographs. On the basis of that information, a police surveillance team monitored defendant's home, and he was arrested after driving up to the house. Defendant was wearing a jacket that was similar to the jacket worn by the perpetrator as seen on the videotape. Further, a knit hat with a visor, which matched a description given by the victim, was found in a search of defendant's bedroom. Defendant was tried and convicted of armed robbery and felonious assault and sentenced to terms of imprisonment for both offenses.[1]

II. ANALYSIS

A. DOUBLE JEOPARDY ARGUMENT

Defendant first claims that his convictions and sentences for armed robbery and felonious assault violate his constitutional protections against double jeopardy. The constitutional provisions barring double jeopardy, US Const, Am V, and Const 1963, art 1, § 15, prohibit a

---

[1] The jury acquitted defendant of possession of a firearm during the commission of a felony. MCL 750.227b.

defendant from being punished multiple times for the same offense. *People v Torres*, 452 Mich 43, 64; 549 NW2d 540 (1996).

In the recently issued opinion of *Smith, supra* at 315, the Michigan Supreme Court held that the ratifiers of the 1963 Michigan Constitution intended that the Double Jeopardy Clause be construed consistently with then-existing Michigan caselaw and with the interpretation given to the Fifth Amendment by federal courts. The *Smith* Court concluded "that the ratifiers intended that the term 'same offense' be given the same meaning in the context of the 'multiple punishments' strand of double jeopardy that it ha[d] been given with respect to the 'successive prosecutions' strand." *Id.* at 315-316. Federal courts, in interpreting the "same offense" language in the context of multiple punishments, first look to determine whether the Legislature expressed a clear intent that multiple punishments be imposed. *Id.* at 316. If the Legislature clearly intended to impose multiple punishments, the imposition of multiple punishments, regardless of whether the offenses share the same elements, does not offend the constitutional protections against double jeopardy. *Id.* If the Legislature has not clearly expressed its intention to impose multiple punishments, federal courts apply the "same elements" test announced in *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 2d 306 (1932). *Smith, supra* at 316. Under the *Blockburger* "same elements" test, two offenses are not the "same offense" if each requires proof of an element that the other does not. *Id.* at 300, 307. The *Smith* Court adopted *Blockburger* as the proper test under Michigan law relative to double jeopardy analysis in the context of multiple punishments, overruling *People v Robideau*, 419 Mich 458; 355 NW2d 592 (1984). *Smith, supra* at 296, 324.

Pursuant to *Smith*, we must determine if armed robbery requires proof of an element not required in establishing a felonious assault and whether felonious assault requires proof of an element not required in establishing an armed robbery.[2] The armed robbery statute, MCL 750.529, currently provides:

> A person who engages in conduct proscribed under [MCL 750.530] and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years. If an aggravated assault or serious injury is inflicted by any person while violating this section, the person shall be sentenced to a minimum term of imprisonment of not less than 2 years.

The Legislature had amended MCL 750.529 in 2004, resulting, in part, in the deletion of the following language: "Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny . . . ." 2004 PA 128; see also Michigan Compiled Laws Annotated (West, 2004) Historical and Statutory Notes following MCL 750.529.

---

[2] In conducting its double jeopardy analysis relative to the crimes of first-degree felony murder and armed robbery, the *Smith* Court stated:

> First-degree felony murder contains elements not included in armed robbery—namely a homicide and a *mens rea* of malice. Likewise, armed robbery contains elements not necessarily included in first-degree felony murder—namely that the defendant took property from a victim's presence or person while armed with a weapon. Accordingly, we conclude that these offenses are not the "same offense" under either the Fifth Amendment or Const 1963, art 1, § 5 and therefore defendant may be punished separately for each offense. [*Smith, supra* at 319.]

This deleted language was replaced, as reflected above, by language that references persons who engage in conduct proscribed by MCL 750.530.[3] MCL 750.530(1) provides:

> A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.

The incorporation of MCL 750.530,[4] the unarmed robbery statute, into the armed robbery statute by the 2004 amendment leads us to the conclusion that a prosecutor must now prove, in order to establish the elements of armed robbery, that (1) the defendant, in the course of committing a larceny[5] of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. See CJI2d 18.1 (new instruction on armed robbery that contains the substance of the elements described above

---

[3] The amendatory language was made effective July 1, 2004, 2004 PA 128; therefore, it is applicable here, given that the armed robbery and felonious assault took place in December 2005.

[4] MCL 750.530 was also amended in 2004 by 128 PA 2004.

[5] "In the course of committing a larceny" is statutorily defined as including "acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property." MCL 750.530(2).

but breaks it down into four elements).[6] These elements arise from a plain reading of the statutes when MCL 750.529 and MCL 750.530 are read in conjunction.[7]

The statute proscribing assault with a dangerous weapon, i.e., felonious assault, MCL 750.82, provides that "a person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony . . . ." "The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

Having compared the elements of armed robbery and felonious assault, we deduce that armed robbery requires proof of an element not required to establish a

---

[6] The standard instruction speaks of using force or violence against, assaulting, or putting in fear the "complainant" and indicates that the "complainant" must be present. CJI2d 18.1(2) and (4). We note, however, that MCL 750.530 discusses the use of force or violence, an assault, or the placing in fear in relation to "any person" who is present.

[7] If the wording or language of a statute is plain and unambiguous, the Legislature is deemed to have intended the meaning clearly expressed, and we must enforce the statute as written. *People v Tombs*, 472 Mich 446, 451; 697 NW2d 494 (2005); *Shinholster v Annapolis Hosp*, 471 Mich 540, 549; 685 NW2d 275 (2004). We note that in *Smith, supra* at 319, our Supreme Court stated that "[t]he elements of armed robbery are: (1) an assault; (2) a felonious taking of property from the victim's presence or person; and (3) while the defendant is armed with a weapon." However, the criminal action at issue in *Smith* occurred in January 2003, which was before the effective date of 128 PA 2004, and the Court's recital of the elements paralleled the now deleted language contained in MCL 750.529 before the amendment. We would also note that it was unnecessary for the *Smith* Court, in the context of examining felony murder and armed robbery, to elaborate on the fact that an armed robbery can be effectuated without the actual use of a dangerous weapon.

felonious assault, i.e., actions in the course of committing a larceny. Furthermore, the elements of felonious assault require proof of an element not *required* to establish an armed robbery, i.e., the use of a dangerous weapon. Indeed, an armed robbery can be completed without the actual use of a dangerous weapon, such as where a defendant uses an article fashioned in a manner to lead a person to reasonably believe that the article is a dangerous weapon, or where the defendant merely represents orally or otherwise that he or she is in possession of a dangerous weapon. Felonious assault, on the other hand, requires the use of a dangerous weapon. MCL 750.82; *Avant, supra* at 505.[8]

We conclude that double jeopardy issues are not implicated when a defendant is convicted and sentenced for both armed robbery and felonious assault, because they are not the "same offense" given that, under the "same elements" test that is now applicable to the "multiple punishments" strand of double jeopardy under *Smith*, each offense has an element that is not required for the other.[9]

---

[8] *Smith* indicated that it is the legal elements of the respective offenses that must be focused on and examined, not the particular factual circumstances giving rise to the charges. See *Smith, supra* at 307-311, 314-316. Thus, the actual use of a dangerous weapon to accomplish a particular armed robbery is irrelevant to the double jeopardy inquiry.

[9] In light of the amendments of MCL 750.529 and MCL 750.530 and the Supreme Court's ruling in *Smith*, we no longer find relevant the decision in *People v Yarbrough*, 107 Mich App 332; 309 NW2d 602 (1981), in which this Court held that felonious assault and armed robbery should be punished separately only when it can be clearly established that the offenses occurred at separate times. Additionally, the language in MCL 750.529 mandating a minimum two-year prison term when an aggravated assault or serious injury is inflicted during an armed robbery does not reflect a clear intention by the Legislature that felonious assault and armed robbery should not be prosecuted and punished separately. See *Smith, supra* at 316. The Legislature has shown its capability at clearly and expressly precluding prosecutions under multiple statutes, e.g.,

B. CONFRONTATION CLAUSE ARGUMENT

Defendant also claims that his right of confrontation was violated when the lead detective testified that he received a telephone call from an FBI agent who told him that one of the agent's informants recognized the man in the still photographs as defendant. Because defendant failed to object to the testimony, we review defendant's argument for plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Defendant also argues that he was denied the effective assistance of counsel because counsel failed to object to the detective's testimony. Because defendant failed to move for a new trial or for a *Ginther*[10] hearing, our review of defendant's claim of ineffective assistance of counsel is limited to errors apparent on the record. *People v Rodriguez*, 251 Mich App 10, 38; 650 NW2d 96 (2002).

A defendant has the right to be confronted with the witnesses against him or her. US Const, Am VI; Const 1963, art 1, § 20; *Crawford v Washington*, 541 US 36, 42; 124 S Ct 1354; 158 L Ed 2d 177 (2004). The Confrontation Clause prohibits the admission of all out-of-court testimonial statements unless the declarant was unavailable at trial and the defendant had a prior opportunity for cross-examination. *Id.* at 68. A statement by a confidential informant to the authorities generally constitutes a testimonial statement. *United States v Cromer*, 389 F3d 662, 675 (CA 6, 2004). However, the Confrontation Clause does not bar the use

---

providing that "[a] person who commits retail fraud in the second degree [under MCL 750.356d] shall not be prosecuted under [MCL 750.360]." MCL 750.356d(3). Such clarity is not reflected in MCL 750.529; there is no statement that a person shall not be additionally prosecuted or punished under MCL 750.82.

[10] *People v Ginther*, 390 Mich 436, 441-442; 212 NW2d 922 (1973).

of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted. *People v McPherson*, 263 Mich App 124, 133; 687 NW2d 370 (2004), citing *Crawford, supra* at 59 n 9. Thus, a statement offered to show the effect of the out-of-court statement on the hearer does not violate the Confrontation Clause. *People v Lee*, 391 Mich 618, 642-643; 218 NW2d 655 (1974). Specifically, a statement offered to show why police officers acted as they did is not hearsay. *People v Jackson*, 113 Mich App 620, 624; 318 NW2d 495 (1982).

In the present case, the challenged testimony did not violate defendant's right of confrontation. The testimony was not offered to establish the truth of the informant's tip. Rather, it was offered to establish and explain why the detective organized a surveillance of defendant's home and how defendant came to be arrested. Because the Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted, the testimony did not violate defendant's right of confrontation. Thus, the trial court did not plainly err when it admitted the detective's testimony. In addition, because the testimony did not violate defendant's right of confrontation, any objection to the testimony would have been futile. Counsel is not ineffective for failing to make a futile objection. *People v Fike*, 228 Mich App 178, 182-183; 577 NW2d 903 (1998). Accordingly, defendant was not denied the effective assistance of counsel.

### III. CONCLUSION

Pursuant to *Smith, supra*, we hold that there was no double jeopardy violation because armed robbery and felonious assault do not constitute the "same offense"

given that each requires proof of an element that the other does not. Further, we hold that there was no Confrontation Clause violation because the out-of-court testimonial statement by the confidential informant was not admitted to establish or prove the truth of the matter asserted. Accordingly, counsel was not ineffective for failing to raise a futile objection. In sum, reversal of defendant's convictions and sentences is unwarranted.

Affirmed.