*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ADAM JOHN ZAWACKI,

Defendant-Appellant.

UNPUBLISHED
July 20, 2023

No. 360288
Wexford Circuit Court
LC No. 2021-013080-FH

Before: M. J. KELLY, P.J., and SHAPIRO and REDFORD, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of discharging a weapon from a vehicle, MCL 750.234a(1)(a); carrying a concealed weapon (CCW) in a vehicle, MCL 750.227; and reckless use of a firearm, MCL 752.863a. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to serve 3 to 15 years' imprisonment for discharging a weapon from a vehicle, 18 to 90 months' imprisonment for CCW, and 93 days in jail for reckless use of a firearm. We affirm.

## I. BACKGROUND

This case arises out of an incident at a group of rental cabins in Cadillac, Michigan. Witnesses described the location as a cul-de-sac with two rows of five cabins facing each other. Defendant previously lived at one of the cabins with his girlfriend, Erica Kline, but had moved out two months prior to the incident. On May 26, 2021, defendant arrived in front of Kline's cabin in his Ford Mustang. Aaron Colcord, who lived in the cabin next to Kline, testified that he approached defendant and asked him to leave. According to Colcord, defendant then retrieved a "pistol" from inside the vehicle. Colcord told defendant that if he continued what Colcord thought he was doing, Colcord was "going to have to use force." In response, defendant "just laughed and started shooting off the gun" from the driver's side of the car. Colcord claimed that, after shooting the gun a few times, defendant pointed the gun at Colcord's face and said: "This bullet is for your temple[.]" Colcord testified that he reached into the open driver's side car door and grabbed defendant's arm as defendant was shooting the gun. Colcord yanked on defendant's wrist in an attempt to remove the gun and punched defendant in the face.

George Goodall, another cabin resident, was the first to join the struggle. Goodall testified that he stepped outside after a hearing commotion and then heard Colcord yell, "He's got a gun." Goodall asserted he entered the driver's side of defendant's vehicle and pulled defendant back as Colcord tried to pull the gun away from defendant on the passenger side. Jeremy Hooker, yet another cabin resident, testified that he ran outside his cabin after hearing gun shots. Hooker "heard at least eight shots" while he was inside, and the gun "went off maybe two more times" as he ran toward defendant's car. Hooker saw Colcord and defendant "leaning through the crack of the [car] door" and "wrestling over a gun on the hood." Colcord's "hand was on [defendant's] wrist" in an attempt to take the gun from defendant. Hooker then ran over and hit defendant in the face, and defendant dropped the gun.

Kline testified that the gun was hers and that she picked it up and brought it into her home. Michigan State Troopers arrived at the scene and found Colcord, Goodall, and defendant struggling inside the vehicle. Defendant was taken by ambulance to be treated for his injuries. The troopers searched Kline's cabin with permission and found the firearm under her mattress. An evidence technician processed the crime scene and located 11 ammunition casings surrounding the sides and rear of defendant's car, but he did not recover any bullets or discover any bullet holes. Five casings were located on the ground near the front passenger side of defendant's car, three casings were located on the ground near the driver's side, and the remaining casings were located on the ground "a couple of feet" behind the rear of the car.

Kline, who testified for the defense, claimed that she woke up to the sound of gunshots, and when she walked outside, it "looked like [Colcord] had the gun in his hand over" defendant. On cross-examination, Kline stated that she told the police officers during her initial interview that defendant had the gun, not Colcord. Defendant also testified, claiming that when he arrived at Kline's cabin Colcord came out and fired two or three rounds, told defendant to leave, and threatened to shoot him if he came back. Defendant stated that his wife was with him when he arrived, but she ran away when the shooting began. Colcord then put defendant in a headlock and fired eight or nine more rounds as defendant yelled for help, which resulted in Goodall and Hooker running outside and hitting defendant. On cross-examination, defendant admitted that he told his wife during a phone call that he had fired the gun.[1]

As noted, the jury found defendant guilty of discharging a weapon from a vehicle, CCW, and reckless use of a firearm. The jury found defendant not guilty of assault with a dangerous weapon (felonious assault), MCL 750.82(1), possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and brandishing a firearm in public, MCL 750.234e.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

---

[1] Although not expressly stated at trial, it is clear from the record that defendant made this statement in a recorded jail phone call.

Defendant first argues that he was denied effective assistance of counsel when defense counsel did not order a ballistic report and hire a firearms expert. Alternatively, defendant requests we remand for a *Ginther*[2] hearing.[3]

"To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (quotation marks and citation omitted).

Defendant argues that his trial counsel should have hired a firearms expert to determine whether the statements of the witnesses aligned with the placement of the shell casings found near his car. However, while defendant speculates that a ballistics report[4] and firearms expert would have offered favorable evidence to the defense, he has failed to make an offer of proof as to the content of such testimony.[5] Speculation does not support an ineffective-assistance claim, nor does it warrant remand for a *Ginther* hearing. See *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009); MCR 7.211(C)(1). Defendant fails to show that defense counsel was ineffective or that remand is justified.

Further, in the absence of expert evidence, defense counsel argued that Goodall's and Hooker's testimonies were unreliable given inconsistencies with each other's testimony and the location of the shell casings. Again, it is unknown whether expert evidence regarding the shell casings would have actually supported defense counsel's argument. Both the prosecution and defense witnesses testified that gun shots were fired while defendant and Colcord were fighting over the gun in an extended struggle. Colcord, Goodall, and Hooker all testified that defendant

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] Claims of ineffective assistance of counsel present mixed questions of fact and law. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). Factual findings are reviewed for clear error, while questions of law are reviewed de novo. *Id*. Findings of fact are "clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016). Because no evidentiary hearing was held in the trial court, our review is limited to errors apparent from the record. *People v Acumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).

[4] Defendant does not specifically address how a ballistics report would have aided the defense; presumably, he is referring to a report by the sought expert that would indicate the shooter's location based on the shell casings. We note that while the record suggests that Kline's gun was sent to a crime lab, it is not apparent from the record why this was done or that a report was completed.

[5] Defendant has provided an affidavit asserting only his belief that testimony about the shell casings would have discredited the prosecution's witnesses and resulted in his acquittal on all charges.

shot the gun until the magazine was empty, all while Colcord tried to take the gun from him. The prosecution witnesses described the gun as being in various places and shot in different directions, which is more or less consistent with shell casings being found all the way around the car. It is therefore unlikely that expert testimony would have made a difference at defendant's trial. Indeed, the central question in this case was *who* had the gun and fired it, defendant or Colcord, and any inconsistencies between the location of the gun as testified to by the prosecution witnesses and the found shell casings would not necessarily be damaging, let alone fatal, to the prosecution's case. Further, while the defense witnesses testified that Colcord had the gun, they were both impeached by their prior statements to the contrary. Kline had previously told the officers that defendant had the gun, and defendant admitted at trial that he told his wife on the phone that he did, in fact, fire the gun to keep Colcord, Goodall, and Hooker at bay. Defendant also admitted that he had conversations with his wife in which he attempted to convince her to state that she was with him during the incident. Defendant also admitted that he asked his wife to convince Kline to testify it was Colcord who had the gun. For these reasons, even if defense counsel's performance was deficient for any of the reasons claimed by defendant, he cannot show a reasonable probability of a different outcome at trial.

In conclusion, defendant fails to establish that he was denied effective assistance of counsel, and we deny his request to remand for a *Ginther* hearing.

### III. CHALLENGE TO THE SCORING OF OV 1

Defendant also argues that the trial court erred by assessing 25 points for OV 1. We disagree.[6]

OV 1 concerns the aggravated use of a weapon and is assessed at 25 points if "[a] firearm was discharged at or toward a human being . . . ." MCL 777.31(1)(a). "OV 1 is an 'offense-specific' variable; therefore, in scoring OV 1, the trial court [is] limited to 'considering the sentencing offense alone.' " *People v Chelmicki*, 305 Mich App 58, 72; 850 NW2d 612 (2014), quoting *People v McGraw*, 484 Mich 120, 134; 771 NW2d 655 (2009). "However, in doing so, a trial court may properly consider all of 'defendant's conduct during' that offense." *Chelmicki*, 305 Mich App at 72, quoting *McGraw*, 484 Mich at 134.

Defendant first contends that the assessment of 25 points for OV 1 was not supported by any evidence that he discharged a gun at or toward a human being. The prosecution, on the other hand, maintains that the trial court properly assessed 25 points on the basis of Hooker's testimony. Hooker testified that defendant shot the gun "in the direction of [his] house" while he was inside watching a baseball game and later as he ran toward defendant's car. When later asked to confirm

---

[6] When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. Defendant preserved this issue by raising it in his motion to remand to the trial court. See *People v McChester*, 310 Mich App 354, 357; 873 NW2d 646 (2015).

that those shots were aimed toward his home, Hooker answered, "Just down in that general direction." In addition to Hooker's testimony, Goodall testified that, as he tried to restrain defendant by putting him in a choke hold from behind, defendant reached with the weapon in his right hand around Goodall and fired the gun out the driver's side door. We agree with the prosecution that this was sufficient evidence to uphold the trial court's scoring. While there is no evidence that defendant discharged the firearm directly at a human being, he fired shots in close proximity to Goodall and in the general direction of Goodall and Hooker. Accordingly, it was not clear error for the trial court to conclude that defendant discharged a firearm toward a person.

Defendant also argues that, in scoring OV 1 at 25 points, the trial court considered "acquitted conduct" at sentencing in violation of his due-process rights. See *People v Beck*, 504 Mich 605, 609, 629; 939 NW2d 213 (2019). In *Beck*, the Supreme Court held that "due process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted." *Id*. The Court described "acquitted conduct" as conduct that "has been formally charged and specifically adjudicated not guilty by a jury." *Id*. at 620. To help clarify what constitutes acquitted conduct, in *People v Brown*, 339 Mich App 411, 423-425; 984 NW2d 486 (2021), we adopted the "rational-jury approach," which focuses "on what the parties actually disputed at trial[:]"

> This approach moves away from prohibiting any and all facts and circumstances related to any element of the crime and instead focuses on the key facts and circumstances that the parties argued about during the trial. This approach is similar to the 'rational jury' standard used in the double-jeopardy context, which requires examining the record to determine the ground or grounds upon which a rational jury could have acquitted the defendant. Rather than focus on all of the conceivable grounds upon which a jury could have theoretically acquitted the defendant—even those grounds, for example, that were conceded by the defense or otherwise uncontested by the parties—the focus would be on the grounds that the parties actually put in dispute at trial. The inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings. [Quotation marks and citation omitted.]

In *Brown*, we held that the trial court erred by imposing an upward departure sentence on the basis that the defendant was responsible for the decedent's death when the jury acquitted the defendant of murder and manslaughter charges on a self-defense theory. See *id*. at 425-428.

In this case, defendant argues that his acquittal of felonious assault precluded the trial court from finding that defendant discharged a firearm at Colcord. While it appears highly likely that the jury acquitted defendant of felonious assault against Colcord on the basis of self-defense,[7] this

---

[7] "The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Chambers*, 277 Mich App 1, 8; 742 NW2d 610 (2007) (quotation marks and citation omitted). The alleged victim of this charge was Colcord, and the jury was instructed that the prosecutor was required to prove beyond a reasonable doubt, among other elements, "that the Defendant either

did not preclude a scoring of OV 1 as to other individuals, i.e., Hooker and Goodall, when defendant was convicted of a shooting offense. Specifically, to convict defendant of discharging a weapon from a vehicle, the jury was required to find beyond a reasonable doubt that defendant "endanger[ed] the safety of another individual" when he "discharge[d] a firearm from a motor vehicle." MCL 750.234a(1)(a). As we explained in *Brown*, 339 Mich App at 423: "[I]f a specific fact or circumstance was relevant to both the acquitted charge and the convicted charge—i.e., if there was an overlap of relevant conduct—then the trial court could consider that fact or circumstance when sentencing on the convicted charge." Accordingly, because defendant's discharge of a firearm related both to acquitted and convicted charges, the trial court was permitted to consider such conduct when it scored OV 1. It would be inconsistent to conclude that the trial court was precluded from finding that defendant discharged a firearm toward a person when the jury necessarily found that defendant endangered another person by discharging a weapon.

In sum, the trial court did not improperly rely on acquitted conduct in scoring OV 1. And because the record supports the trial court's finding that defendant discharged a gun toward another individual, it did not clearly err by assessing 25 points for OV 1.[8]

Affirmed.

/s/ Michael J. Kelly
/s/ Douglas B. Shapiro
/s/ James Robert Redford

---

attempted to commit a battery on Aaron Colcord or did an act that would cause a reasonable person to fear or apprehend an immediate battery," and that "the Defendant intended either to injure Aaron Colcord or to make Aaron Colcord reasonably fear an immediate battery." The prosecutor argued that defendant placed Colcord in fear of an immediate battery by making a threat and shooting the gun.

Defense counsel's primary argument to the jury was that it was Colcord, not defendant, who fired the gun. But defense counsel alternatively argued that defendant acted in self-defense, emphasizing that Colcord, Goodall and Hooker "freely admitted they were pounding [defendant]." The trial court instructed the jury on self-defense, stating that "[i]f a person acts with lawful self-defense, his actions are justified, and he is not guilty of assault with a dangerous weapon or felonious assault." Given the evidence that defendant repeatedly shot the gun while engaged in a physical struggle with Colcord, it is unclear on what grounds the jury could have acquitted defendant of felonious assault unless it determined that defendant acted in self-defense.

[8] Defendant also argues that he was denied effective assistance of counsel at sentencing because defense counsel failed to object to the scoring of OV 1. However, because the evidence supports a score of 25 points for OV 1, and the scoring is not based on acquitted conduct, any objection by defense counsel would have been meritless, and counsel is not ineffective for failing to make a meritless objection. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).